GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. James Lewis Fillyaw was convicted in Panola County Circuit Court of possession of precursors used in the manufacture of a controlled substance. He was sentenced to a term of ten years in the custody of the Mississippi Department of Corrections, with five years suspended pursuant to five years of post-release supervision. On appeal, he claims that: (1) the jury selection was improper, and (2) he received ineffective assistance of counsel at trial. We find no error and affirm.
 

 FACTS
 

 ¶ 2. Craig Sheley, an off-duty police officer, observed Fillyaw and his cousin, Shannon Looney, at the Walmart in Batesville, Mississippi buying what Officer Sheley believed to be precursors used to make methamphetamine. Afterward, Officer Sheley left the Walmart and called the sheriff, “Shot” Bright. Then Officer She-ley went to Murphy USA, a gas station, and again saw the vehicle with Fillyaw and Looney. Meanwhile, the sheriff arrived at the gas station along with a police officer.
 

 ¶ 3. While Looney was in the gas station, a policeman approached Fillyaw’s vehicle and asked to search it. Fillyaw gave the policeman permission to search the vehicle, whereupon a number of items were taken into evidence. The items included two Walmart receipts that showed purchases at 5:09 p.m. and 5:54 p.m. that day. Both receipts had purchases for pills containing pseudoephedrine. Police also found a bottle of “Heat,” hydrogen peroxide, lithium batteries, zip-lock bags, and plastic tubing in the vehicle. No methamphetamine was found in the vehicle.
 

 ¶ 4. The plastic tubing, lithium batteries, and pseudoephedrine were found in the glove box where Looney was seated. The “Sudafed,” which contained pseudoephed-rine, and the hydrogen peroxide were found in the console. “Drain Out” was found in the back seat behind the driver. Jason Chrestman commanded the Panola County narcotics task force and made a list of the items taken into evidence.
 

 ¶ 5. At trial, Chrestman testified that pseudoephedrine, lithium, and “Drain Out” were precursors and that the tubing could be used in the manufacturing process. Zabe Davis, an agent with the “Narcotics Task Force,” testified to the use of sodium hydroxide and hydrogen peroxide in the cooking process and to the purpose of pseudoephedrine.
 

 ¶ 6. Teresa Hickman, a forensic scientist, was qualified as an expert for the State in the identification of controlled substances. Hickman identified the pseudoephedrine and sodium hydroxide as precursors and explained their role in the manufacture of methamphetamine.
 

 ¶ 7. Looney testified that he and Fillyaw planned to cook methamphetamine that day. They went to Walmart where Fil-lyaw bought the pseudoephedrine, and Looney bought the drain crystals and hydrogen peroxide. On cross-examination, Fillyaw’s counsel attempted to impeach Looney with his recent guilty plea in drug court, which potentially obviated the significant time of imprisonment Looney was faced with. On redirect examination, Loo
 
 *988
 
 ney testified that if he failed to complete drug court, then he would have to serve his full sentence.
 

 ¶ 8. Fillyaw took the stand in his own defense. He testified that he had planned to go hunting when Looney came by and was “sniffing and draining.” So Fillyaw went to Walmart to purchase “Sudafed,” hydrogen peroxide, and baby powder. When Fillyaw returned to his truck, the other items were there. Fillyaw testified that he consented to the search because he thought he had nothing to hide. Fillyaw admitted that he had used methamphetamine before, but he denied that they were planning to manufacture methamphetamine on the day that his vehicle was searched.
 

 ¶ 9. The jury returned a guilty verdict. Thereafter, Fillyaw appealed. Fillyaw’s counsel filed a brief pursuant to
 
 Lindsey v. State,
 
 939 So.2d 743 (Miss.2005). Fillyaw’s counsel stated that there were no arguable issues to support an appeal. In
 
 Lindsey,
 
 the Mississippi Supreme Court proscribed the procedure to be followed when a defendant’s attorney does not find any arguable issues to support an appeal.
 
 Id.
 
 at 748(¶ 18). Following the
 
 Lindsey
 
 procedure, Fillyaw filed a pro se supplemental brief. We find no error and affirm.
 

 ANALYSIS
 

 ¶ 10. Pursuant to
 
 Lindsey,
 
 939 So.2d at 748(¶ 18), it is the appellate counsel’s responsibility to determine that his client’s case presents no arguable issues on appeal; to file a brief showing that counsel has thoroughly reviewed the record and has found nothing to support an appeal; and, to send his client a copy of the brief, informing his client that he found no arguable issue for an appeal and advising him of his right to file a pro se supplemental brief. If the defendant raises any arguable issue in his pro se brief or if the appellate court finds any arguable issues upon its independent review of the record, the appellate court must, if circumstances warrant, require counsel to file a supplemental brief of the issue.
 
 Id.
 

 ¶ 11. Here, Fillyaw’s attorney filed a brief indicating that he diligently searched the procedural and factual history of this action and scoured the record searching for any arguable issues that could be presented in good faith, but he found none. Fillyaw’s attorney asserts that he examined: (1) the reason for the arrest and the circumstances surrounding the arrest of Fillyaw; (2) any possible violations of Fil-lyaw’s right to counsel; (3) the entire transcript and content of the record; (4) all rulings of the trial court; (5) possible procedural misconduct; (6) all jury instructions; (7) all exhibits, whether admitted into evidence or not; (8) possible misapplication of the law in sentencing; (9) the indictment and all the pleadings in the record; and (10) any possible ineffective assistance of counsel issues.
 

 ¶ 12. Fillyaw filed a supplemental brief. In his brief, he claims that the jury was not chosen in a fair manner, and he appears to assert an ineffective assistance of counsel claim. After a thorough review of the record, this Court found no arguable, non-frivolous issues.
 

 1. Jury Selection
 

 ¶ 13. Fillyaw argues that the day before his hearing, “they went door to door and made phone calls to round up seven” jury members. The essence of this argument is that Fillyaw claims that the manner in which the jury members were chosen was not legal. We find nothing in the record to support this claim.
 

 ¶ 14. Additionally, we find no indication in the record that there was a
 
 Bat-son
 
 challenge raised during the jury selec
 
 *989
 
 tion process. Hence, any such claim would be waived.
 
 Anderson v. State,
 
 1 So.3d 905 (¶ 18) (Miss.Ct.App.2008).
 
 [1]
 
 Fillyaw’s appellate attorney states that the transcript of the voir dire proceedings was not included in the record because Fillyaw’s trial counsel saw no errors, made no objections, and neither raised nor believed that there existed any reason to raise a
 
 Batson
 
 challenge.
 

 ¶ 15. Finally, Fillyaw’s pro se brief on appeal cites no authority to support his challenge to the jury selection process. Therefore, there is no merit to this issue.
 

 2. Ineffective Assistance of Counsel
 

 ¶ 16. Fillyaw seems to argue that his attorney was ineffective by not having bond set for Fillyaw. Fillyaw claims that his mother was putting up a deed to property to provide that bond be set for Fil-lyaw, but Fillyaw’s attorney advised against having bond .set since he could not afford an attorney.
 

 ¶ 17. To succeed on a claim for ineffective assistance of counsel, Fillyaw must show that his counsel’s performance was deficient and that the deficiency prejudiced the defense of his case.
 
 Burns v. State,
 
 813 So.2d 668, 673(¶14) (Miss.2001) (citing
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Fillyaw fails to assert any facts or legal authority to support his claim, that his attorney’s actions were improper. Therefore, we find no merit to this issue.
 

 ¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF POSSESSION OF PRECURSORS USED IN THE MANUFACTURE OF A CONTROLLED SUBSTANCE AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANO-LA COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . The Mississippi Supreme Court denied writ of certiorari.
 
 Anderson v. State,
 
 2006-CT-00282-SCT, 999 So.2d 1280 (Miss. Feb. 5, 2009).